989 A.2d 1267 (2010)
412 N.J. Super. 286
COMMUNICATIONS WORKERS OF AMERICA, LOCAL 1034, Appellant,
v.
NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL 203, and County of Burlington, Respondents.
No. A-1394-08T1
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2009.
Decided March 11, 2010.
Jason L. Jones argued the cause for appellant (Weissman & Mintz, L.L.C., Somerset, attorneys; Mr. Jones, on the brief).
*1268 David Grossman, Kenilworth, argued the cause for respondent, New Jersey State Policemen's Benevolent Association, Local 203 (Cohen, Leder, Montalbano & Grossman, L.L.C., attorneys; Bruce D. Leder, of counsel; Mr. Grossman, on the brief).
Zazzali, Fagella, Nowak, Kleinbaum & Friedman, Newark, attorneys for amicus curiae New Jersey State Policemen's Benevolent Association (Paul L. Kleinbaum, on the brief).
Don Horowitz, Deputy General Counsel, argued the cause for New Jersey Public Employment Relations Commission.
Before Judges WEFING, GRALL and LeWINN.
The opinion of the court was delivered by
LeWINN, J.A.D.
"[E]xcept where established practice, prior agreement, or special circumstances dictate the contrary, no policeman shall have the right to join an employee organization that admits employees other than policemen to membership." N.J.S.A. 34:13A-5.3. The Public Employment Relations Commission (PERC) has determined that assistant superintendents and apprentice assistant superintendents employed in the Burlington County Weights and Measures Department are policemen simply because a public employee holding that position has the statutory authority to arrest if a provision of the Weights and Measures Law, N.J.S.A. 51:1-1 to 51:1-133, is violated in his or her presence. N.J.S.A. 51:1-106. We conclude that PERC has given greater effect to N.J.S.A. 34:13A-5.3 than the Legislature intended and, for that reason, reverse and remand to permit PERC to reconsider.

I.
On June 26, 2007, the New Jersey State Policemen's Benevolent Association, Local 203 (PBA Local 203) filed a petition with PERC seeking to represent Burlington County's assistant superintendents and apprentice assistant superintendents of weights and measures. The employees holding the positions were then represented by the Communications Workers of America, Local 1034 (CWA), but they had expressed interest adequate to permit consideration of PBA Local 203's application. See N.J.A.C. 19:10-1.1; N.J.A.C. 19:11-1.1; N.J.A.C. 19:11-2.1.
On May 16, 2008, following precedent established by PERC in In re County of Warren, 12 NJPER 357 (¶ 17134 1986), the Director determined that the employees were "policemen" within the meaning of N.J.S.A. 34:13A-5.3, severed them from the CWA, which admits employees other than policemen to membership, and directed an election to permit them to choose between no representation and representation by PBA Local 203. While the Director adhered to PERC's decision in County of Warren, he observed that the facts of this case might warrant PERC's reconsideration of that precedent. Burlington County and CWA sought review by PERC, and PERC stayed the election and granted review. N.J.A.C. 19:11-8.2(a)(1). On September 25, 2008, PERC issued its final decision, reaffirming County of Warren and affirming the Director's application of its holding, dissolving the stay and remanding the matter to schedule the election.
On October 31, 2008, PERC conducted the election, which resulted in a unanimous vote in favor of representation by PBA Local 203. The Director certified the results of this election on November 12, 2008, establishing PBA Local 203 as the elected representative of all full-time and *1269 part-time weights and measures assistant superintendents and apprentices employed by Burlington County.
CWA now appeals and challenges PERC's determination that the employees affected are "policemen" within the meaning of N.J.S.A. 34:13A-5.3 and, therefore, prohibited from belonging to a union that admits non-police employees to membership. PERC and PBA Local 203 have submitted briefs in support of PERC's determination, and we granted the New Jersey State PBA leave to participate as amicus curiae.

II.
The history of the union membership and the duties, responsibilities and authority of officers employed by the Burlington County Weights and Measures Department as assistant superintendents are not in dispute. In his May 16, 2008 decision, the Director made the following pertinent findings of fact:
1. The County and CWA have signed a series of collective negotiations agreements which have included the weights and measures titles for more than 20 years.
2. The County established a weights and measures department under the aegis of the Weights and Measures statute, N.J.S.A. 51:1 et. seq.

. . . .
4. The County uses the New Jersey Department of Personnel job description for assistant superintendent of weights and measures for its employees in the department of weights and measures.
. . . .
6. The disputed employees test commercial scales, equipment, fuel storage tanks, pumps, food measuring devices and containers.
7. The [New Jersey] Department of Personnel job description for assistant superintendent of weights and measures neither lists nor refers to any authority to make arrests. The description lists tasks including: conducting investigations of alleged or suspected violations; preparing reports of findings and action taken; appearing in court as an expert witness; investigat[ing] complaints; withhold[ing] seals; recommend[ing] corrective action; fil[ing] papers for prosecution of violations; halt[ing] trucks to check for proper credentials..., explain[ing] and interpret[ing] laws and regulations governing weights and measures; and inspect[ing], test[ing] and calibrat[ing] various types of equipment.
. . . .
In the "knowledge and abilities" section, the job specification requires an assistant superintendent to be able to comprehend, interpret and explain basic laws and regulation procedures and standards applicable to weights and measures inspections; collect and compile evidence; act as a witness under oath; and "[ ] to take a firm stand when controversies arise."
8. The petitioned-for employees did not attend any police academy. They do not carry firearms.
The County has prohibited assistant superintendents from making arrests. It is unaware of any weights and measures employee attempting an arrest of any person violating the weights and measures laws or regulations over the past 10 years.
If an incident arises involving an individual allegedly violating the weights and measures statute, the assigned County weights and measures assistant superintendent or apprentice superintendent is directed to immediately contact a local police department or County Prosecutor's office.

*1270 Assistant superintendents of weights and measures and apprentice superintendents are ineligible to enroll in the Police and Firemen's Retirement System.
Weights and measures officers are issued "badges" or identification cards after successfully completing a course of instruction under the direction of the State Superintendent of Weights and Measures. The identification card advises that the holder (an "apprentice") is authorized by the State Superintendent... to enforce the New Jersey weights and measures statute.... Neither the identification card nor the badge identifies the employee as a police officer.
Notwithstanding these findings, the Director and PERC relied upon County of Warren, supra, 12 NJPER at 357.

III.
We note initially that PERC is charged with administering the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -29, and its interpretation of the Act is entitled to substantial deference. N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 352, 696 A.2d 585 (1997). Appellate courts "`will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute.'" In re Camden County Prosecutor, 394 N.J.Super. 15, 22-23, 925 A.2d 63 (App.Div.2007) (quoting County of Gloucester v. Public Employment Relations Commission, 107 N.J.Super. 150, 156, 257 A.2d 712 (App.Div.1969), aff'd, 55 N.J. 333, 262 A.2d 1 (1970)). "Although an agency's `interpretation of the statute it is charged with administering ... is entitled to great weight,'... [appellate courts] will not yield to PERC if its interpretation is `plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent.'" Id. at 23, 262 A.2d 1 (citations omitted).
PERC's interpretation of the law outside of its charge is entitled to "no special deference." Ibid. Moreover, deference is not afforded when PERC's interpretation gives a provision of the Act greater reach than the Legislature intended, N.J. Tpk. Auth., supra, 150 N.J. at 351-52, 696 A.2d 585, and PERC must follow judicial precedents interpreting the Act, In re Byram Twp. Bd. of Ed., 152 N.J.Super. 12, 22, 377 A.2d 745 (App.Div. 1977).
With those standards in mind, we consider the parties' contentions. CWA argues that statutory authorization to arrest only for violations of the weights and measures law does not make these assistant superintendents and apprentices "policemen" under N.J.S.A. 34:13A-5.3. PBA Local 203 contends that PERC correctly followed its own precedent in a manner "consistent with the law and case precedent." Amicus curiae similarly contends that the decision to sever weights and measures employees from CWA and affiliate them with PBA Local 203 serves the Legislature's purpose by ensuring that such employees "are not subjected to conflicts of interest that may arise that could impede the collective bargaining process."
As noted, N.J.S.A. 34:13A-5.3 provides, with certain exceptions not pertinent here, that "no policeman shall have the right to join an employee organization that admits employees other than policemen to membership." In enacting N.J.S.A. 34:13A-5.3, "the Legislature was seriously concerned with preventing law enforcement officers, authorized to make detections, apprehensions and arrests, from joining an employees' union which might place them in a conflicting position and create circumstances for possible divided loyalty or split *1271 allegiance." County of Gloucester, supra, 107 N.J.Super. at 157, 257 A.2d 712 (emphasis added). In County of Gloucester, the court concluded that the Legislature's goal was avoidance of the potential for conflicting interests and divided loyalties. Ibid. The court reached that conclusion about the purpose of the law after looking to a federal statute limiting security guards from joining unions representing non-guards and judicial decisions construing that statute with a focus on a guard's duty to respond in the event of labor unrest and the inherent potential for conflict with fellow union members. Id. at 157, 257 A.2d 712 (citing National Labor Relations Bd. v. American Dist. Tel. Co., 205 F.2d 86, 89 (3d Cir.1953)).
The issue in County of Gloucester was whether PERC's determination that corrections officers were not "policemen" under N.J.S.A. 34:13A-5.3 was correct. Id. at 155, 257 A.2d 712. Based on the legislative intent of N.J.S.A. 34:13A-5.3 to avoid "divided loyalty or split allegiance," the court held that corrections officers are "policemen" by virtue of the authority granted to them under N.J.S.A. 2A:154-4. Id. at 157-58, 257 A.2d 712. That statute provides:
All correction officers of the State of New Jersey ... shall ... in addition to any other power or authority, be empowered to act as officers for the detection, apprehension, arrest and conviction of offenders against the law.
[N.J.S.A. 2A:154-4.]
The court in County of Gloucester reasoned that N.J.S.A. 2A:154-4 "is unambiguous and plainly vests in correction[s] officers specific powers and duties commonly exercised by the police," id. at 157, 257 A.2d 712 (emphasis added), and concluded that the authority to act as police commonly act, whether or not exercised in the past, placed corrections officers in the same position as police with respect to potential for conflict and divided interests. Id. at 158, 257 A.2d 712. Thus, the court concluded that they were "policemen" under N.J.S.A. 34:13A-5.3 who may not be in the same employee organization as non-policemen. Id. at 158-59, 257 A.2d 712.
In County of Warren, supra, 12 NJPER at 357, PERC, purportedly relying on the reasoning in County of Gloucester, supra, 107 N.J.Super. at 156-58, 257 A.2d 712, held that
[l]ike corrections officers, ... [weights and measures] employees have been charged with the statutory duty to make arrests.... We believe that once there is a finding that an employee has power of arrest, it is not necessary to extend the inquiry into whether there is an actual or potential conflict of interest with non[-]police employees.
[Id. at 358, 257 A.2d 712.]
PERC's decisions in County of Warren and in this case, however, do not follow the rationale of County of Gloucester. They rest solely upon N.J.S.A. 51:1-106, which authorizes arrest by "[a] weights and measures officer, on the violation of any of the provisions of this Title [N.J.S.A. 51:1-1 to:13-3] within his view or presence." In County of Warren, PERC deemed that narrow arrest authority "dispositive." 12 NJPER at 358. In this case, PERC concluded that because of that statutory authority to arrest there was no need to assess the potential for conflict of the sort the Legislature intended to avoid through this provision of N.J.S.A. 34:13A-5.3. In effect, PERC has established a per se rule based upon authority to arrest, no matter how narrow its scope, without considering the relevance of that rule to the Legislature's purpose in limiting the right of a policeman to join unions with membership that includes persons who are not policemen.
*1272 PERC has misread County of Gloucester, and, as a consequence, has given N.J.S.A. 34:13A-5.3 greater reach than the Legislature intended. PERC, like courts, must strive to interpret the Act in accordance with its language and the Legislature's intent. See N.J. Tpk. Auth., supra, 150 N.J. at 352, 696 A.2d 585; County of Gloucester, supra, 107 N.J.Super. at 155-56, 257 A.2d 712.
The term critical to the question presented in this case"policeman"is not defined. County of Gloucester, supra, 107 N.J.Super. at 155-56, 257 A.2d 712. Pursuant to N.J.S.A. 1:1-1, that undefined term must "be read and construed with [its] context, and shall, unless inconsistent with the manifest intent of the [L]egislature..., be given [its] generally accepted meaning, according to the approved usage of the language." That is what this court did in County of Gloucester; the court considered the reason and spirit of N.J.S.A. 34:13A-5.3, the common understanding of the term "policeman" and related statutes addressing the duties and responsibilities common to police work. Id. at 156, 257 A.2d 712. In contrast, in this case and in County of Warren, PERC focused on nothing other than the limited authority the Legislature has given these employees to arrest for violations of the weights and measures law.
The language of N.J.S.A. 34:13A-5.3 and statutes addressing police work do not suggest the Legislature considers regulatory officers to be "policemen." Statutes identifying officers who perform "police work" for the purpose of assuring that they are adequately trained to protect the public, provide some guidance but offer no support for PERC's determination. N.J.S.A. 52:17B-66 to -77. At the municipal and county level, the Legislature's efforts to train those who do police work include officers who have "by statute or ordinance the responsibility of detecting crime and enforcing the general criminal laws of this State." N.J.S.A. 52:17B-67 (emphasis added) (defining "Law enforcement unit"). The Legislature also included corrections officers; as noted above, they have that general law enforcement authority by virtue of N.J.S.A. 2A:154-4. N.J.S.A. 52:17B-67 (defining "Police officer"). Neither county weights and measures officers nor any other county officers with authority limited to the enforcement of regulatory laws are mentioned.
The authority to arrest for violations of the weights and measures law committed in an employee's presence is not comparable to the general law enforcement authority granted to police and corrections officers. It is even narrower in scope than the authority to arrest granted to all persons. See N.J.S.A. 2A:169-3 (giving constables, police officers and "any other person" authority to arrest for a disorderly person offense committed in his or her presence) (emphasis added).
PERC's extension of the term "policeman" to include these employees does not account for the narrow field in which they operate relative to the broad functions of persons commonly considered to be policemen. In County of Gloucester, it was the similarity of the authority of corrections officers and policemen that led this court to conclude that they were in the same position as policemen relevant to the Legislature's purpose in limiting the right of a policeman to join a union with members who are not policemen. 107 N.J.Super. at 156-57, 257 A.2d 712.
As far as we can discern, the limited statutory arrest authority enjoyed by these weights and measures employees does not pose the potential risk of conflicting interest and divided loyalties the Legislature sought to address. If PERC had followed County of Gloucester, it would have addressed whether the exercise of these employees' limited authority to arrest *1273 for a violation of the weights and measures law, alone or in combination with their other duties and responsibilities, would "place them in a conflicting position and create circumstances for possible divided loyalty or split allegiance" if they were to join a union that accepted members who were not policemen. Id. at 157, 257 A.2d 712.
Unless PERC can articulate a reason based upon the Legislature's purpose in adopting N.J.S.A. 34:13A-5.3 or some other provision of the Act, it exceeds its statutory authority by extending the scope of the Act's limitation on a policeman's right to join a union to public employees who are not commonly understood to be policemen or treated as such in other statutes that apply to policemen. N.J. Tpk. Auth., supra, 150 N.J. at 351-52, 696 A.2d 585.
PERC's interpretation of the term "policeman" includes any public employee who occupies a position in which there is any statutory authority to arrest, even authority that is limited to arrest for regulatory violations that have no apparent relationship to any activity likely to be undertaken by the union or a co-worker. Fashioned as it was without reference to the plain meaning or purpose of the law, PERC's per se rule has the clear capacity to reach persons the Legislature had no intention to include. Ironically, the broad reading of the term "policeman" may have the effect of undermining the Legislature's intent by bringing members who have responsibilities quite different than those of "policemen" into a union with members who are "policemen." N.J.S.A. 34:13A-5.3.
Accordingly, we concur with CWA that the employees' statutory arrest power alone is not sufficient to deem them "policemen" within the intendment of N.J.S.A. 34:13A-5.3. Because the per se rule PERC adopted in County of Warren and applied in this case apparently extends the scope of the statute beyond what the Legislature intended, we disapprove that rule and reverse.
We do not vacate PERC's final determination, however. As PERC relied on the per se rule, we cannot know whether PERC's ruling is supportable on some other basisconsistency with the Legislature's intention to avoid divided loyalties on the part of "policemen" that is inherent in the aggregate statutory authority of these employees but not apparent to us, N.J.S.A. 34:13A-5.3; N.J.S.A. 51:1-106; County of Gloucester, supra, 107 N.J.Super. at 156-57, 257 A.2d 712; relevance to statutes governing arbitration for police officers and the "community of interest" standard for negotiating units, N.J.S.A. 34:13A-14a to -16.6; N.J.S.A. 34:13A-5.2; or consistency with a proper exercise of PERC's general authority to administer the Act, N.J.S.A. 34:13A-2; N.J.S.A. 24:13A-5.2. The Legislature's broad delegation of authority to PERC in matters of representation demands that PERC apply its expertise to address the petition anew without reliance on the per se rule we have disapproved and in light of the arguments presented by the parties. We leave the scope of the proceedings on remand to the discretion of PERC and decline to consider issues that PERC has not yet addressed.
Reversed and remanded for further proceedings in conformity with the decision. We do not retain jurisdiction.